IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

JACK RAY AUSTIN,

    Petitioner,

v.                                                                                          No. 1:18-cv-01061-JDB-jay

UNITED STATES OF AMERICA,

    Respondent.

ORDER GRANTING MOTION TO WITHDRAW MOTION TO AMEND,
DIRECTING CLERK TO TERMINATE MOTION,
DENYING MOTION FOR WRIT OF MANDAMUS,
DENYING § 2255 PETITION,
DENYING A CERTIFICATE OF APPEALABILITY
AND
DENYING LEAVE TO APPEAL *IN FORMA PAUPERIS*

On April 9, 2018, Petitioner, Jack Ray Austin, filed a *pro se* motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (the "Petition"). (Docket Entry ("D.E.") 1.) For the following reasons, the Petition is DENIED.[1]

BACKGROUND

On June 7, 2002, Austin entered a plea of guilty in the United States District Court for the Western District of Tennessee to one count of armed bank robbery, in violation of 18 U.S.C. § 2113(a) and (d), and one count of using a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c). (*United States v. Austin*, No. 1:02-cr-10007-JDB-1 ("No. 02-

---

[1] On July 11, 2019, Petitioner filed a motion to amend the Petition, (D.E. 25), which he later moved to withdraw, (D.E. 28). The motion to withdraw, (D.E. 28), is GRANTED, and the Clerk is DIRECTED to terminate the motion at D.E. 25. On September 25, 2019, the inmate filed a document styled "Motion for Writ of Mandamus." (D.E. 27.) It is apparent from the statements contained in the motion that Petitioner meant to file that document in the Sixth Circuit Court of Appeals. However, to the extent the document can be liberally construed as a motion for a ruling on the merits of the Petition, the motion is DENIED as moot.

cr-10007"), D.E. 51, 52 (W.D. Tenn.).) The Court conducted a hearing in January 2003 and sentenced the Defendant to sixty-six months' imprisonment on Count 1 and eighty-four months of incarceration on Count 2, for a total term of imprisonment of 150 months.[2] (*Id.*, D.E. 79.) Five years of supervised release on each conviction was also imposed. (*Id.*)

Twelve years later, while on supervised release, Austin entered a bank in Alamo, Tennessee, wearing "a black ski mask and blue latex gloves." (2015 Presentence Report (the "2015 PSR") at 4.) He approached a teller, "pointed a firearm at her, handed her a bag, and ordered her to put money in the bag, and she complied." (*Id.*) He "then went to a second teller" and did the same. (*Id.*)

In November 2015, a federal grand jury sitting in the Western District of Tennessee returned an indictment charging Austin with armed bank robbery, in violation of 18 U.S.C. § 2113(a). (*United States v. Austin*, 1:15-cr-10094-JDB-1 ("No. 15-cr-10094"), D.E. 1 (W.D. Tenn.).) A petition for offender under supervision (the "Supervision Petition") was filed in his 2002 criminal case, charging him with violating the conditions of supervised release imposed in that case. (No. 02-cr-10007, D.E. 99.) The document alleged that Austin committed crimes while on supervised release and failed to perform the required community service. (*Id.*, D.E. 99 at PageID 162.) In June 2016, Austin pleaded guilty to bank robbery without a plea agreement and admitted to the violations set forth in the Supervision Petition. (No. 15-cr-10094, D.E. 47 at PageID 138.) During the plea hearing, the Defendant acknowledged, under oath, that he could be required to serve up to ninety-six months in prison for the supervised release violations. (*Id.*, D.E. 47 at PageID 146.)

---

[2] The Court refers to Petitioner as "the Defendant" in its discussion of the underlying criminal cases.

2

Austin was assigned a base offense level of 20 for the robbery offense, pursuant to § 2B3.1(a) of the United States Sentencing Commission *Guidelines Manual* (the "Guidelines" or "U.S.S.G."), and also received the following enhancements: 2 points under § 2B3.1(b)(1) for taking "the property of a financial institution," and 6 points under § 2B3.1(b)(2)(B) because a firearm was "otherwise used."[3] (2015 PSR at 6.) He received a 3-point decrease in his offense level for acceptance of responsibility. (*Id.* at 6–7 (citing U.S.S.G. § 3E1.1(a), (b).) "Based upon a total offense level of 25 and a criminal history category of III, the guideline imprisonment range [was] 70 months to 87 months." (*Id.* at 20 (bolding omitted).) The advisory range on the supervised release violations, which was set forth in a worksheet attached to the Supervision Petition (the "Worksheet"), was determined to be forty-six to fifty-seven months' incarceration.[4] (No. 02-cr-10007, D.E. 99 at PageID 164.)

A consolidated sentencing hearing was conducted in October 2016. (*See* No. 15-cr-10094, D.E. 48.) The Court sentenced Austin to consecutive terms of imprisonment of seventy months for the armed robbery and forty-six months for the supervised release violations. (*Id.*, D.E. 48 at PageID 181–82.)

In his direct appeal, Austin challenged the imposition of the supervised release sentence consecutively to the armed robbery sentence. *United States v. Austin*, No. 17-5592, D.E. 29-2 at 2 (6th Cir. Mar. 9, 2018). The Sixth Circuit rejected the argument. *Id.*, D.E. 29-2 at 2–3.

---

[3] All references to the Guidelines are to those in effect on the date of Austin's sentencing in October 2016. *See* United States Sentencing Commission *Guidelines Manual* (eff. Nov. 2015).

[4] Under the Guidelines, Austin's violation of his supervised release by means of his 2015 bank robbery was classified as a Grade A violation, which represented his "[m]ost [s]erious [g]rade of [v]iolation." (No. 02-cr-10007, D.E. 99 at PageID 164 (citing U.S.S.G. § 7B1.1(b)).) With a criminal history category of V, as determined at the time of his 2003 sentencing, the resulting Guidelines range for the supervised release violations was forty-six to fifty-seven months. (*See id.*); *see also* Revocation Table in U.S.S.G. § 7B1.4(a).

DISCUSSION

Petitioner asserts three claims of attorney ineffective assistance. In Claims 1 and 2, he maintains that his trial and appellate counsel should have argued that the "[C]ourt err[ed] in sentencing [him] to 46 months" on the supervised release violation because the "statutory maximum [was] 36 months." (D.E. 1 at PageID 6.) He contends in Claim 3 that his appellate counsel was ineffective for failing to argue that the Government did not establish the factual predicate for the 6-point enhancement under the Guidelines.[5] (*Id.* at PageID 10.) Respondent argues that the claims are without merit. (D.E. 15 at PageID 62–64.) The Court agrees.

A. Legal Standards

A prisoner seeking to vacate his sentence under § 2255 "must allege either (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (citation and internal quotation marks omitted). Ineffective assistance of counsel is an "error of constitutional magnitude." *See Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).

A claim that an attorney's ineffective assistance has deprived a criminal defendant of his Sixth Amendment right to counsel is controlled by the standards stated in *Strickland v. Washington*, 466 U.S. 668 (1984). To succeed on such an assertion, a petitioner must demonstrate two elements: (1) "that counsel's performance was deficient"; and (2) "that the deficient

---

[5] The Court liberally construes all claims as asserting the ineffective assistance of counsel. To the extent the Petition could be read as asserting stand-alone claims challenging the sentences, such arguments would be deemed waived as not having been raised on direct appeal. *See Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001) ("Normally, sentencing challenges must be made on direct appeal or they are waived.").

performance prejudiced the defense." *Id.* at 687. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686.

To establish deficient performance, a petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. A court considering a claim of ineffective assistance must apply "a strong presumption" that the attorney's representation was "within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (internal quotation marks and citation omitted). An attorney's "strategic choices" are "virtually unchallengeable" if based on a "thorough investigation of law and facts relevant to plausible options." *Id.* at 690. "[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* at 690–91.

To demonstrate prejudice, a petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 693). Instead, "[c]ounsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Id.* (quoting *Strickland*, 466 U.S. at 687).

B. Claims 1 and 2

Austin's assertions of attorney ineffective assistance in Claims 1 and 2 are premised on his allegation that the statutory maximum for his supervised release violations was thirty-six months.

5

Because the allegation is without merit as a matter of law, Petitioner cannot show that his attorneys were ineffective in failing to argue that the revocation sentence exceeded the statutory maximum or that he was prejudiced by their conduct.

Courts are authorized to "revoke a term of supervised release" upon a defendant's violation of the conditions of supervised release. 18 U.S.C. § 3583(e)(3). Upon revocation, a court may impose no "more than 5 years in prison if the offense that resulted in the term of supervised release is a class A felony, [and no] more than 3 years in prison if such offense is a class B felony." *Id.*

In Petitioner's case, the convictions that resulted in the terms of supervised release were his Class B felony for armed robbery (Count One of the 2002 indictment), and his Class A felony for the use of a firearm during and in relation to a crime of violence (Count 2 of the 2002 indictment).[6] (*See* No. 02-cr-10007, D.E. 99 at PageID 164.) Austin's supervised release violations, to which he pleaded guilty, therefore subjected him to a maximum of three years' imprisonment on Count 1 and up to five years on Count 2. The forty-six-month sentence he received fell well below the potential aggregate of eight years, and also fourteen months below the five-year maximum he could have received on Count 2 alone. Accordingly, an objection that the sentence exceeded the statutory maximum would have been futile, and "the failure to make futile objections does not constitute ineffective assistance." *Altman v. Winn*, 644 F. App'x 637, 644 (6th Cir. 2016).

---

[6] A conviction is a Class A felony if it carries a maximum penalty of death or life in prison, while an offense is a Class B felony if the term of imprisonment is twenty-five years or more. 18 U.S.C. § 3559(a)(1)–(2). Armed robbery is a Class B felony, *United States v. McCoy*, 53 F. App'x 753, 753 (6th Cir. 2002), and the use of a firearm during and in furtherance of a crime of violence is a Class A felony, *United States v. Howard*, No. 3:07CR666-01, 2008 WL 423432, at *1 (N.D. Ohio Feb. 14, 2008).

The inmate nevertheless complains that the Worksheet shows that he was to receive no more than thirty-six months in prison. (D.E. 1 at PageID 6.) In support, he quotes that document's statement that "the statutory maximum term of imprisonment is 36 months." (*Id.*) The argument is without merit.

The full sentence from the Worksheet reads as follows: "Being originally convicted of a Class B felony (Count One), the statutory maximum term of imprisonment is 36 months; and the statutory maximum term of imprisonment for a Class A felony (Count Two) is 60 months with an aggregate total of 96 months." (No. 02-cr-10007, D.E. 99 at PageID 164.) The statement, *in its entirety*, is legally correct, and therefore does not support Petitioner's argument that the statutory maximum was thirty-six months. Claims 1 and 2 are DENIED.

C. Claim 3

In Claim 3, Austin insists that his appellate counsel was ineffective for failing to appeal the Guidelines enhancement for his use of a firearm during the robbery. (D.E. 1 at PageID 10.) He alleges that "[n]othing in the PS[R] suggest[ed] that [he] had a firearm in his hands or in [his] possession." (*Id.* at PageID 11.) The claim is without merit.

The Guidelines provide that the offense level for robbery is to be "increase[d] by 6 levels" where a "firearm was otherwise used." U.S.S.G. § 2B3.1(b)(2)(B). "'Otherwise used' . . . means that the conduct did not amount to the discharge of a firearm but was more than brandishing, displaying, or possessing a firearm or other dangerous weapon." U.S.S.G. § 1B1.1, cmt. 1(J).

At Petitioner's change of plea hearing, the Government's attorney summarized the offense conduct, stating in part:

> On November 6th, 2015, the defendant, Jack Ray Austin, robbed the BankcorpSouth Bank in Alamo, Tennessee. [He] entered the side door of the bank wearing a black mask, latex gloves and holding a firearm which he pointed at a

teller. He demanded money from two tellers who then turned over bank money to him against their will.

(No. 15-cr-10094, D.E. 47 at PageID 150.) Austin affirmed, under oath, that the Government's summary was correct. (*Id.*, D.E. 47 at PageID 152.) At sentencing, the Court made a finding that the enhancement applied. (*Id.*, D.E. 48 at PageID 177.)

Contrary to Petitioner's assertion that there was no evidence to support the enhancement, his admitted conduct of pointing a gun at the tellers and demanding money constituted the "otherwise use[]" of a firearm. *See United States v. Bolden,* 479 F.3d 455, 463 (6th Cir. 2007) ("Pointing a gun while telling someone what to do obviously goes beyond . . . brandishing, and . . . amounts to 'otherwise using' a firearm."). In light of his client's guilty plea and admissions, counsel represented to the Court at sentencing that his client had "wanted to vigorously defend" against application of the enhancement, but that he "just didn't see how [he] could do that." (No. 15-cr-10094, D.E. 48 at PageID 177.)

Because the enhancement was properly applied, appellate counsel did not perform deficiently by deciding not to challenge the enhancement. For the same reason, Petitioner was not prejudiced by counsel's failure to raise the issue. Claim 3 is DENIED.

## APPEAL ISSUES

A § 2255 petitioner may not proceed on appeal unless a district or circuit judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). A COA may issue only if the petitioner has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2)–(3). A substantial showing is made when the petitioner demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell,* 537 U.S. 322, 336 (2003)

(quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). "If the petition was denied on procedural grounds, the petitioner must show, 'at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" *Dufresne v. Palmer*, 876 F.3d 248, 252–53 (6th Cir. 2017) (per curiam) (quoting *Slack*, 529 U.S. at 484).

In this case, reasonable jurists would not debate the correctness of the Court's decision to deny the Petition. Because any appeal by Petitioner does not deserve attention, the Court DENIES a certificate of appealability.

Pursuant to Federal Rule of Appellate Procedure 24(a), a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a). However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, the prisoner must file his motion to proceed *in forma pauperis* in the appellate court. *Id.*

In this case, for the same reason it denies a COA, the Court CERTIFIES, pursuant to Rule 24(a), that any appeal in this matter would not be taken in good faith. Leave to appeal *in forma pauperis* is therefore DENIED.[7]

IT IS SO ORDERED this 10th day of October 2019.

s/ J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE

---

[7] If Petitioner files a notice of appeal, he must pay the full $505.00 appellate filing fee or file a motion to proceed *in forma pauperis* and supporting affidavit in the Sixth Circuit Court of Appeals within thirty days.